# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| MAR'BELLA SANDOVAL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:18-CV-01562 JAR |
| SERCO, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Opposed Motion for Conditional Certification and Notice to Putative Class Members (Doc. No. 38) and Defendant's Motion for Denial of Plaintiff's Motion for Court-Facilitated Notice, Accounting of Plaintiff's Communications with Putative Class Members, and Sanctions. (Doc. No. 64). The motions are fully briefed and ready for disposition.[1]

**I.   Background**

This is an action for overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500, et seq. Defendant Serco, Inc. ("Serco") is a multinational services company headquartered in Virginia that serves primarily federal, state, and local governments. (Collective/Class Action Complaint ("Compl."), Doc. No. 1 at ¶ 20). Serco employs numerous customer service or call-center employees across the nation who are responsible for speaking

---

[1] On May 8, 2019, the Court held a telephone status conference with counsel to discuss the definition of the proposed class as well as the issue of sanctions.

with and assisting customers of Serco's clients. Plaintiff is a former Serco hourly call-center employee. (Compl. at ¶ 11).

Plaintiff brings Count I of her complaint as an "opt-in" collective action under the FLSA, § 216(b), on behalf of "all hourly call-center employees who were employed by Serco, Inc., anywhere in the United States, at any time from September 17, 2015 through the final disposition of this matter." (Compl. at ¶ 40). Count II is brought under the MMWL as a Federal Rule of Civil Procedure 23 class action on behalf of "all hourly call-center employees who were employed by Serco, Inc., in Missouri, at any time from September 17, 2016 through the final disposition of this matter." (Compl. at ¶ 69).

Plaintiff alleges that she and the putative class members are required to start and log-in to their computers, open and log-in to multiple different Serco computer programs, and ensure that each program is running correctly - all of which can take up to twenty minutes - before they are able to take their first phone call, which comes in as soon as their official shift starts. (Compl. at ¶ 27). Plaintiff further alleges that Serco frequently required her and the putative class members to assist customers after the end of their scheduled shifts, and to remain at their computers during the lengthy shut-down process, activities which were performed after the employees' scheduled shifts had concluded. (Compl. at ¶ 28). As a result of Serco's policy and practice of requiring its employees to perform these start-up and shut-down tasks off-the-clock and without pay before their scheduled shifts began, and after their scheduled shifts ended, Plaintiff alleges that she and the putative class members were not compensated for all hours worked. (Compl. at ¶¶ 3, 4, 26-34).

On November 21, 2018, Plaintiff filed her Motion for Conditional Certification and Notice to Putative Class Members. (Doc. No. 38). In her motion, Plaintiff requests the Court conditionally certify a collective action and authorize notice to the following class:

> All hourly call-center employees who worked for Serco, Inc. in the Affordable Care Act Division, anywhere in the United States, at any time in the preceding three years through the final disposition of this matter.

Serco opposes certification on the grounds that Plaintiff has failed to (1) clearly define the group of individuals she purports to represent; and (2) establish she is "similarly situated" to the individuals she purports to represent. In further opposition, Serco argues that conditional certification and court-facilitated notice would be improper because Plaintiff has already, without this Court's authorization, distributed notice before filing her motion. Serco notes that by the time it filed its answer to Plaintiff's complaint on November 9, 2018, 273 consent to join forms had been filed by Plaintiff's counsel. (See Doc. Nos. 9-19, 22-25, 27, 31, 34-36).

On March 14, 2019, Serco filed a motion for denial of court-facilitated notice, accounting of Plaintiff's communications with the putative class, and sanctions, asserting that Plaintiff's counsel has been unilaterally contacting unrepresented individuals to solicit their participation in this case. According to Serco, on February 17, 2019, an attorney at Plaintiff's counsel's firm emailed the following communication to an unknown number of individuals:

> We have added an update to our case against Serco. You can find the update here, https://a2xlaw.com/active-cases/serco/[2]

---

[2] The firm's web page provides the following information:

**Overview**
Case Title: Sandoval v. Serco, Inc.
Case No. 4:18-cv-01841

On September 17, 2018, we filed this collective action on behalf of all hourly call center employees of Serco.

> *Please share this website with anyone you know who worked for Serco so they can complete the consent form linked at the bottom to join the case. Every person who joins makes the case stronger and pushes Serco to settle more quickly before more people join.* Additionally, please take a moment to look at our other active cases. Oftentimes, wage violations like the one in this case are shared across the industry and you may find that you are eligible for another case we have against another employer you worked for.
>
> If you have already signed a consent form to join this case you **do not** need to complete another one. If your address, phone number, or other contact details have changed please email those changes to Team@a2xlaw.com with the subject line CHANGE OF CONTACT INFORMATION.
> …
>
> E-MAIL NOTICE - The information contained in this email is intended only for the individual or entity to which it is addressed. Its contents (which include any attachments) may contain confidential or privileged information or both. If you are not an intended recipient, you are prohibited from using, disclosing, disseminating, copying or printing its contents. If you received this email in error, please notify the sender and purge all copies from your system.
>
> **What is the Case about?**
> We filed this collective action against Serco in the U.S. District Court for the Eastern District of Missouri for a class of hourly employees who were not paid for all hours worked.
> The Case alleges that Serco violated the Fair Labor Standards Act by failing to pay employees for all hours worked. Specifically, Serco does not pay employees for time spent booting up and logging into their computers. Serco also does not pay employees for time spent performing post-shift duties.
>
> Plaintiff believes that she and other hourly employees are entitled to recover unpaid wages, unpaid overtime, interest on the unpaid wages, liquidated damages, attorney's fees, and costs.
>
> **Who is Eligible for this Case?**
> Anyone who worked in a Serco call center as an hourly employee within the past three years is potentially eligible for the Case.
>
> **How do I Join the Case?**
> You may join the Case by e-signing the **Consent Form**. You may also print out the form, sign it, and mail it to our office at, 819 North Upper Broadway, Corpus Christi, TX 78401. It is important to sign and return this form as quickly as possible because the time period for your recoverable wages will depend on when this form is filed with the Court.

(Doc. No. 66-5).

(Emphasis added). (Doc. No. 66-2). One of the recipients of this communication posted it to her Facebook page on February 20, 2019. Serco argues this communication is misleading, improper, and unethical, and a "perversion" of the court-facilitated notice process.

## II. Discussion

### A. Motion for conditional certification

Section 7 of the FLSA mandates that an employer may not subject non-exempt employees to a work week in excess of forty hours, unless the employee is compensated for his or her overtime with additional pay of at least one and one-half times his or her regular hourly wage. 29 U.S.C. § 207. A collective action under the FLSA to recover overtime compensation and liquidated damages may be maintained, "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an "opt-in" basis, requiring employees to provide their consent in writing to join the action. Id.; Murphy v. Ajinomoto Windsor, Inc., No. 1:15CV0120, 2017 WL 1194455, at *2 (E.D. Mo. Mar. 30, 2017).

The FLSA does not define the term "similarly situated." Kautsch v. Premier Communications, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007). Moreover, the Eighth Circuit has not yet decided the standard for determining whether employees are "similarly situated." District courts in this circuit, however, consistently apply a two-step analysis to the question of conditional certification. See, e.g., Kennedy v. Boulevard Bank, No. 4:12CV40 JCH, 2012 WL 3637766, at *2 (E.D. Mo. August 22, 2012); Ondes v. Monsanto Co., No. 4:11CV197 JAR, 2011 WL 6152858, at *2 (E.D. Mo. Dec. 12, 2011); Perrin v. Papa John's Intern., Inc. , No. 4:09CV1335 AGF, 2011 WL 4089251, at *2 (E.D. Mo. Sept. 14, 2011); Beasely v. GC Servs.

5

LP, 270 F.R.D. 442, 444 (E.D. Mo. 2010); and Littlefield v. Dealer Warranty Servs., LLC, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010).

Under this two-step process, the plaintiff first moves for class certification at an early stage in the litigation. Kautsch, 504 F. Supp. 2d at 688. A plaintiff's burden when seeking conditional certification is not onerous and the merits of a plaintiff's claims are not considered. Id. Plaintiffs can meet this burden by making a modest factual showing, based upon the pleadings and affidavits, that the proposed class were victims of a single decision, policy, or plan. Ondes, 2011 WL 6152858, at *3 (citations omitted). The plaintiff "need not show that members of the conditionally certified class are actually similarly situated." Dernovish v. AT&T Operations, Inc., No. 09-0015-CV-W-ODS, 2010 WL 143692, at *1 (W.D. Mo. Jan. 12, 2010) (internal quotations and citation omitted). The Court will not make any credibility determinations or findings of fact with respect to contradictory evidence presented by the parties at this initial stage. Perrin, 2011 WL 4089251, *3 (citing Luiken v. Domino's Pizza, LLC, No. 09-516 (DWF/AJB), 2010 WL 2545875, at *2 (D. Minn. June 21, 2010)). "Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to opt-in." Id. (internal quotations and citation omitted).

The second step of the process occurs when the defendant moves to decertify the class. Ford, 2010 WL 1433455, at *3; Beasley, 270 F.R.D. at 444; Dernovish, 2010 WL 143692, at *1. This typically is done after the close of discovery, when the Court has much more information and is able to make a more informed decision. "If the claims are not similarly situated, the Court decertifies the class and the opt-in plaintiffs are dismissed without prejudice." Garner v. Regis Corp., No. 03-5037, 2004 WL 5455905, at *2 (W.D. Mo. Aug. 5,

2004) (citation omitted). It is under this general framework that the Court analyzes Plaintiff's motion to conditionally certify the class.

Plaintiff argues that conditional certification is appropriate in this case because she and the putative class members all worked as non-exempt hourly call-center employees, performing the same or similar job duties, i.e., interacting with Serco's customers by telephone for the purpose of assisting individuals registering for insurance pursuant to the ACA. She submits sworn declarations from herself and nineteen putative class members to that effect and notes that 271 individuals from four different states have joined this lawsuit as opt-in plaintiffs seeking to recover their unpaid wages and overtime compensation.[3] (Doc. No. 39 at 11).

According to the declarations, Plaintiff and the putative class regularly worked an additional one to two hours a week outside of their designated shifts to complete tasks necessary to the performance of their jobs, but were not paid for this "off the clock" time. (See Doc. No. 40, Exhibit A at A1–A20, ¶¶ 9-11). Serco required Plaintiff and the putative class members to arrive early so they could be "call ready" by the time their scheduled shifts began. (See id. at ¶¶ 5). In order to do that, Serco required Plaintiff and the putative class members to arrive to work at least fifteen (15) minutes early to successfully log-in to their computer systems and prepare their phones to begin accepting calls. (See id.). Because Plaintiff and the putative class members were required to assist customers until their scheduled shift ended, they could not begin the process of shutting down their various systems until after their scheduled shift ended. (See id.). This shut-down process can take approximately ten (10) minutes each day. (See id.). Although

---

[3] Plaintiff has filed another 31 consent to join forms during the pendency of her Motion for Conditional Certification, including four filed in December 2018 (Doc. Nos. 46-47), eight filed in January 2019 (Doc. Nos. 52, 56-60), fifteen filed in February 2019 (Doc. Nos. 60-62), three in March 2019 (Doc. No. 63, 68-69), and one in April 2019 (Doc. No. 71), bringing the total number of opt-ins to 302.

Plaintiff and the putative class members arrived to work before their scheduled shifts to start up and log-in to their computer systems and regularly stayed after their scheduled shift time to log-out and shut down their computer systems, they were not paid for this time. (See id. at ¶¶ 4–6). Instead, they were only allowed to enter their scheduled shift hours on their daily time sheets. (See id. at ¶ 7). Serco knew the actual hours worked by Plaintiff and the putative class members because they had to swipe their badge card to access the building. In addition, Serco Team Leaders monitored their work area and noted when they would arrive to work to begin setting up their computer systems, and when they would leave at the end of the day. (See id. at ¶¶ 7–8). When Plaintiff and the putative class members tried to include their pre- and post-shift time worked, their respective Team Leaders forced them to alter their daily time sheets to include only their scheduled shift times. (See id.). Plaintiff and the putative class members attest that these practices and policies applied to all Call Employees at Serco call centers across the county because "Serco regularly made it clear that its policies were made at the corporate level and that strict compliance with its policies was necessary." (See id. at ¶ 12).

In opposition to conditional certification, Serco argues that Plaintiff has failed to clearly define the group of individuals she purports to represent - "all hourly call-center employees who worked for Serco, Inc. in the Affordable Care Act Division" - in such a way to allow the Court to assess whether the putative class members are sufficiently similar to warrant conditional certification. In particular, Serco contends that as defined, Plaintiff's proposed class could include individuals who did not handle calls and/or who perpetrated the alleged unlawful conduct, such as "Team Leads." (Doc. No. 48 at 10-11).

Plaintiff replies that she seeks certification of Serco hourly employees who worked in the four locations that processed ACA applications, such as the General Clerk 2, General Clerk

3, Linguist, Production Control Clerk, and Quality Control Clerk, as well as those individuals who are paid by the hour and required to submit their hours over the Deltek System. Plaintiff does not seek to include supervisors, administrators, recruiters, human resources professionals, trainers, or internal IT support employees in the putative class. (Doc. No. 50 at 2 n.1).

Next, Serco argues that Plaintiff fails to demonstrate that she and the class are "similarly situated" and that her form "fill-in-the-Defendant" declarations do not establish a common unlawful policy or practice. (Doc. No. 48 at 12-19). Serco maintains that the broader evidentiary record shows its Eligibility Support Workers ("ESWs") performed different duties and worked different hours based on their location, team and role, and that even within the same job title, tasks varied based on person, team and the needs of the moment. (See, e.g., Declaration of Judy Gowan, Doc. No. 48-3 at ¶¶ 4, 6, 7, 8, 9).

Further, all Serco employees are required to accurately record their total hours worked each day (see id. at ¶¶ 15-16), and that any request or suggestion to an employee to work hours without reporting the time on their timesheets would be a clear violation of Serco policy (see id. at ¶ 18; see also Declaration of Erin Heitland, Doc. No. 48-5 at ¶ 15 ("Employees are trained on how to log and submit their time each day and workweek. The training makes clear that all hours worked must be recorded and will be paid; there are no exceptions to this rule.")). In the event an employee works more (or less) than their scheduled hours, the supervisor typically works with the employee to provide a commensurate amount of time off (or extra work time) in the same workweek. If the employee exceeds 40 hours for the workweek, however, the employee is paid at the applicable rate. (Declaration of Robin Myers, Doc. No. 48-1 at ¶ 18). Serco asserts that these policies and practices are borne out in written policies, training for new employees, and communications by individual supervisors. (See id. at ¶¶ 21, 22; Declaration of

9

Lawrence Woolever, Doc. No. 48-4 at ¶ 18). Serco also challenges Plaintiff's credibility by submitting her timesheets reflecting "numerous times [she] recorded fewer or greater than 8 hours of work in a given workday." (See Heitland Declaration at ¶ 17).

Lastly, Serco argues that Plaintiff's allegations implicate individualized inquiries such as whether and to what extent each employee worked off-the-clock overtime hours in a given workweek, and whether a supervisor/manager was aware the employee was working off the clock but nevertheless ignored the alleged off-the-clock activities, as well as claimant-specific defenses, all of which highlights the impropriety of conditional certification. (Doc. No. 48 at 19-20).

Class members need not be identically situated to be similarly situated; the "similarly situated" threshold requires only a modest factual showing. Murphy v. Ajinomoto Windsor, Inc., No. 1:15-CV-0120-JAR, 2017 WL 1194455, at *4 (E.D. Mo. Mar. 30, 2017) (internal citations omitted). Simply identifying differences between the parties is not enough to defeat a motion for class certification at this stage of the proceedings. Id. Even if these differences may affect Plaintiff's ability to prove liability, the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations at the certification stage. Id. As long as Plaintiff provides a "colorable basis" for her claim that the putative class members were victims of a single policy or plan, conditional certification is appropriate. Chin v. Tile Shop, LLC, 57 F. Supp. 3d 1075, 1082-83 (D. Minn. 2014) (citation omitted).

Here, Plaintiff has satisfied her minimal burden of demonstrating that she and members of the proposed class were subject to a company-wide policy improperly requiring them to perform work off-the-clock and without pay and are thus similarly situated for purposes of

10

conditional certification. In Beasely, 270 F.R.D. at 445, for example, the court conditionally certified a collective action involving call center employees where plaintiffs alleged that they and the other members of the proposed class were required to perform some work, including but not limited to booting up their computers and logging into one or more computer software programs, without getting paid for it. Likewise in Dernovish, 2010 WL 143692 at *2, the court conditionally certified a collective action involving call center telephone representatives being required to log-in to computer systems before the start of their shifts, despite defendant's arguments that its written policies prohibited such practices and that its employees have different mangers and job requirements. The court found these arguments went to the merits of plaintiffs' claims and that the plaintiffs had made an adequate showing of being similarly situated because they were all required to log-in before they could work. See also Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp.2d 1181, 1188 (D. Minn. 2007) (granting conditional certification of a nationwide class of call center employees, where plaintiffs alleged defendant relied on a uniform system of time monitoring, based upon time logged into the phone system, and plaintiffs submitted declarations from employees in five states making similar allegations, despite substantial variation in the off-the-clock time claimed); Russell v. Illinois Bell Telephone Co., No. 08C1871, 2008 WL 4191763, at *2-5 (N.D. Ill. Sept. 15, 2008) (granting conditional certification where plaintiffs provided nearly 40 affidavits from employees at three of four call centers, which reflected widespread view that employees are expected to work uncompensated overtime, and rejecting defendant's claim that differences in job duties and practices at different centers defeat certification); Shabazz v. Asurion Insurance Service, No. 3:07-0653, 2008 WL 1730318, at *1, 4-5 (M.D. Tenn. Apr. 10, 2008) (granting conditional certification to employees at call center who were not paid compensable time spent preparing

11

for work or finishing work as customer service representatives, claims representatives, verification representatives, quality assurance coordinators, technical support representatives, and/or any similar non-exempt hourly positions). Serco's arguments are not entirely without merit; however, they are better suited for summary judgment or decertification following discovery, or at least where "discovery is largely complete and the matter is ready for trial." Huang v. Gateway Hotel Holdings, 248 F.R.D. 225, 227 (E.D. Mo. 2008).

### B. Notice to potential class members[4]

Plaintiff next asks the Court to authorize notice to the class, and requests a sixty day notice period to return the consent forms as well as a reminder notice to be sent thirty days before the expiration of the opt-in deadline. Plaintiff also asks that she be permitted to send notice to all putative class members by first class mail and email, and that Serco be required to post the notice in a conspicuous location in all break/lunch rooms at call centers where the putative class members are employed. (Doc. No. 39 at 12-15).

In response, Serco argues that Plaintiff has unilaterally undertaken the notice process, as evidenced by the 273 consents to join filed in this case prior to Serco filing its answer, and thereby preempted the Court's ability to shape the delivery of notice. On this basis alone, Serco argues the Court should deny Plaintiff's request for court-authorized notice.[5] (Doc. No. 48 at

---

[4] Plaintiff's proposed class notice is docketed as Doc. No. 40-1.

[5] Serco also argues that Plaintiff should be required to neutralize and balance her proposed notice by, *inter alia*, deleting the case caption - which creates the perception of judicial endorsement of the case; adding language clarifying that the Court has taken no position with respect to Plaintiff's claims; and informing recipients that they may be responsible for Serco's attorneys' fees and costs if they do not prevail. (Doc. No. 48 at 22-23). Further, because Plaintiff has failed to suggest that first class mail is inadequate to effect notice, her request to send notice by email or post notice at Serco's facilities should be denied. (Id. at 23-24). Lastly, Serco argues that any notice should be sent by a third-party administrator; that the notice period should be open for thirty days, not sixty days; and that a reminder notice is unnecessary. (Id. at 24-25).

20-21). To that end, Serco has filed a separate motion urging the Court to deny Plaintiff's motion for conditional certification and order her counsel to produce an accounting of all pre-certification communications with putative class members. (Doc. No. 64 at 12). Alternatively, Serco moves to strike all consent forms filed to date, dismiss the opt-in plaintiffs without prejudice, and order that curative, court-approved notice be issued to the dismissed individuals at Plaintiff's counsel's expense. (Id.) Serco also seeks the imposition of sanctions, including its fees and costs incurred in bringing its motion and opposing Plaintiff's motion for conditional certification.

"The FLSA requires that notice to potential plaintiffs be 'accurate and timely,' so that potential plaintiffs 'can make informed decisions about whether to participate.'" Martinez v. Cargill Meat Solutions, 265 F.R.D. 490, 499 (D. Neb. 2009). "District courts have the authority to manage the cases before them, and as part of that authority, the court supervises the notification process for 'opt-in' collective actions." Id. (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)). "Allowing district courts to approve the content and method of disseminating notice to potential class members ensures that the notices are timely, accurate, and informative; avoids later disputes over the form and content of unsupervised notices; serves the goal of avoiding duplicative suits; and facilitates expeditious disposition by entry of progression orders with "opt-in" deadlines." Hoffmann–La Roche, 493 U.S. at 172.

Although communicating with putative class members is not an ethical violation per se, here, Plaintiff's counsel prematurely and unilaterally distributed notice to current and former Serco employees about this lawsuit and their opportunity to join through targeted ads on Facebook and on their website. A subsequent email by Plaintiff's counsel to an unknown number of individuals provided a link to counsel's website and asked putative class members to

"share this website with anyone you know who worked for Serco so they can complete the consent form linked at the bottom to join the case." The email was then posted on a public Facebook page. The actions of Plaintiff's counsel in distributing notice of this action to potential plaintiffs in this manner are clearly a concerted effort to circumvent the established notification procedure for opt-in collective actions.

Moreover, the communications from Plaintiff's counsel are inaccurate and misleading in that they suggest that *any* Serco employee may participate in the lawsuit, regardless of the position they held or time period in which they worked for Serco. Counsel's statement that "[e]very person who joins makes the case stronger and pushes Serco to settle more quickly before more people join in," implies that putative class members need only sign the consent form and join the case in order to receive compensation from a forthcoming settlement. These statements are clearly at odds with the purpose of the notification process, i.e., to provide fair information approved by the Court from which potential class members can determine whether to opt-in. The Court will, therefore, grant Serco's motion insofar as it seeks to strike all consent to join forms filed to date and dismiss those opt-in plaintiffs without prejudice.

The Court further finds the circumstances of this case warrant equitable tolling of the FLSA's statute of limitations for these plaintiffs who, through no fault of their own, opted-in based on information provided them that was not approved by the Court. See Struck v. PNC Bank N.A., 931 F. Supp. 2d 842, 846 (S.D. Ohio 2013) (Typically, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."). The Court will also require Plaintiff to issue a curative notice to these opt-in plaintiffs informing them that (i) their consents to join were stricken because they were provided with information about this lawsuit that was not approved

by the Court and thus potentially misleading; and (ii) they will be receiving a new notice, approved by the Court. Finally, the Court has determined that Serco has incurred attorney's fees and costs in pursuing its motion for sanctions that but for the conduct of Plaintiff's counsel would not have been incurred. The Court will reserve ruling on whether to impose a monetary sanction to be paid by Plaintiff's counsel.

### III. Conclusion

In accordance with the rulings herein, Plaintiff's motion for conditional certification and notice to putative class members will be granted in part and Serco's motion for denial of court-facilitated notice, accounting of Plaintiff's communications with putative class members, and sanctions will be granted in part.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Opposed Motion for Conditional Certification and Notice to Putative Class Members [38] is **GRANTED** in part, and the Court conditionally certifies a class of:

> **SERCO HOURLY EMPLOYEES WHO WORKED IN THE FOUR LOCATIONS THAT PROCESSED AFFORDABLE CARE ACT APPLICATIONS, SUCH AS THE GENERAL CLERK 2s, GENERAL CLERK 3s, LINGUISTS, PRODUCTION CONTROL CLERK, AND QUALITY CONTROL CLERK AND THOSE INDIVIDUALS WHO ARE PAID BY THE HOUR AND MUST TURN IN THE HOURS OVER THE DELTEK SYSTEM.**

**IT IS FURTHER ORDERED** that Plaintiff Mar'Bella Sandoval is conditionally authorized to act as class representative.

**IT IS FURTHER ORDERED** that the Law Offices of Thomas E. Kennedy, III, L.C. and Anderson Alexander, PLLC, are authorized to act as class counsel.

**IT IS FURTHER ORDERED** that as it relates to notice to the putative class members, Plaintiff's Opposed Motion for Conditional Certification and Notice to Putative Class Members [38] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Denial of Plaintiff's Motion for Court-Facilitated Notice, Accounting of Plaintiff's Communications with Putative Class Members, and Sanctions [64] is **GRANTED** in part.

**IT IS FURTHER ORDERED** that all Opt-In Plaintiffs' consent forms filed as of the date of this Order are **STRICKEN** and all Opt-In Plaintiffs are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the statute of limitations for each of these Opt-In Plaintiffs shall be tolled from the date of this Order to the close of the class notice period to allow for refiling if they so choose; at the conclusion of that period, the statute of limitations will commence running against the claims of the Opt-In Plaintiffs.

**IT IS FURTHER ORDERED** that Plaintiff shall, **within seven (7) days** of the date of this Order, submit a proposed curative notice to Defendant. Defendant shall have **seven (7) days** to respond. Thereafter, the parties shall have **five (5) days** to file a joint agreed upon curative notice with the Court for its approval. In the event they cannot agree, Plaintiff shall submit her proposed curative notice and Defendant shall submit its objections to that notice for the Court's consideration. Once the Court has approved the curative notice, class counsel shall have t**wenty-one (21) days** to disseminate the curative notice to all opt-in plaintiffs dismissed from this action.

**IT IS FINALLY ORDERED** that following the curative notice period, Plaintiff shall have **seven (7) days** to submit a new proposed class notice and consent form to Defendant. Defendant shall have **seven (7) days** to respond. Thereafter, the parties shall have **five (5) days**

16

to file a joint agreed upon class notice with the Court for its approval. In the event they cannot agree, Plaintiff shall submit her proposed class notice and Defendant shall submit its objections to that notice for the Court's consideration. The Court will then issue an order regarding notice to the class.

Dated this 10th day of May, 2019.

                                                  */s/ John A. Ross*
                                                **JOHN A. ROSS**
                                                **UNITED STATES DISTRICT JUDGE**