# SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement and Release Agreement described herein ("**Agreement**"), is entered into by and between Serco, Inc. ("**Serco**"), on the one hand, and Plaintiff Mar'Bella Sandoval ("**Sandoval**"), individually and on behalf of the Opt-In Plaintiffs who joined this case (together with Sandoval, the "**Plaintiffs**") on the other hand.

1. **RECITALS AND BACKGROUND**

WHEREAS, Sandoval filed a Complaint on September 17, 2018 in the United States District Court for the Eastern District of Missouri, Eastern Division (the "**Court**"), which was assigned Case No. 4:18-cv-01562-JAR (the "**Action**") and which the Opt-In Plaintiffs later joined;

WHEREAS, in the Action, Plaintiffs assert claims that Serco violated the minimum wage and overtime provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("**FLSA**"), and the Missouri Wage & Hour Law, R. S. Mo. § 290.502 and R. S. Mo. § 290.505 ("**MWHL**") by allegedly failing to properly compensate hourly-paid, non-exempt Eligibility Support ("**ES**") employees at Serco's CMS-ES sites in Lawton, OK, Rogers, AK, London, KY, and Wentzville, MO (the "**Sites**") for all hours worked, including overtime hours;

WHEREAS, Serco disputes all of the claims and material allegations made by Plaintiffs in the Action and maintains, among other things, that Plaintiffs and other hourly call-center employees were properly compensated for all hours that they worked under federal and state requirements;

WHEREAS, in order to avoid the significant time and expense associated with continued litigation, including, for Serco, the associated business disruption, Plaintiffs and Serco (the "**Parties**") have agreed to settle the Action amicably pursuant to the terms and conditions in this Agreement; and

WHEREAS, Sandoval and Plaintiffs' Counsel represent that they are duly authorized to make decisions and enter into this Agreement on behalf of the Opt-In Plaintiffs and to bind them to its terms and conditions.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

2. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1. **Approval Order.** "Approval Order" means the Order entered by the Court, approving this Agreement and dismissing the Action with prejudice.

2.2. **Bar Date.** "Bar Date" means one hundred twenty (120) days after the first mailing of Notice Packets to Plaintiffs.

2.3. **Claims Administrator.** The "Claims Administrator" shall be Rust Consulting, LLC.

2.4. **Effective Date.** "Effective Date" means day the Court has entered an Approval Order approving this Agreement as provided in Section 3.2.

2.5. ███████████████████████████████████████████████████

2.6. ███████████████████████████████████████████████████

2.7. **Notice Packet.** "Notice Packet" refers to the Notice of Settlement and Settlement Check mailed to Plaintiffs by the Claims Administrator. The purpose of the Notice Packet is to inform Plaintiffs of the settlement, the material provisions of this Agreement, and their rights with respect to this Agreement. The Notice Packet, including the mailing envelope, is attached as Exhibit A.

2.8. **Payroll Taxes.** "Payroll Taxes" means taxes that must be remitted in connection with the payment of wages to current or former employees, including FICA, FUTA, and SUTA obligations, half of which is typically withheld from wage payments made to an employee (i.e., the employee's share) and the other half of which is not (i.e., the employer's share).

2.9. **Plaintiffs' Counsel.** "Plaintiffs' Counsel" means Anderson Alexander, PLLC.

2.10. ███████████████████████████████████████████████████

2.11. **Released Claims.** "Released Claims" means all claims accruing against Serco or any other Releasees between September 17, 2015 and the date the Court enters an Approval Order under the FLSA, the MWHL, and any other applicable federal, state, or local law, common law theory, or contract pertaining to the calculation or payment of wages, including, for example, claims pertaining to minimum wages, overtime wages, compensable time, meal or rest breaks, travel time, commute time, timing of wage payments, expenses or expense reimbursement, or earning statements. The Released Claims encompass any claims pertaining to unpaid wages of any type (including, without limitation, claims for unpaid overtime), liquidated damages, other

---

[1] In addition to the GSF, Serco shall be responsible for paying the employer's share of payroll taxes.

damages, and attorneys' fees and costs, any claims against Serco or the other Releasees.

2.12. **Releasees.** "Releasees" means Serco and its subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, managers, partners, agents, employees, representatives, and assigns.

2.13. **Relevant Period.** The "Relevant Period" means the period of time from September 17, 2015 through the date of the Approval Order.

2.14. **Serco's Counsel.** "Serco's Counsel" means Seyfarth Shaw LLP.

2.15.

2.16.

3. **PROCEDURAL ISSUES**

    3.1. **Claims Administrator**

    A. ***Retention.*** Rust has been retained by Plaintiffs' Counsel to be the Claims Administrator.

    B.

    C. ***Claims Administrator's Responsibilities.*** The Claims Administrator shall be responsible for: (i) performing an initial skip trace to update Plaintiffs' addresses prior to mailing; (ii) preparing, printing and disseminating to Plaintiffs the Notice Packets and Settlement Checks; (iii) performing a skip trace and resending, within seven (7) days of receipt, any Notice Packet returned undeliverable without a forwarding address or resending to those with a new forwarding address; (iv) performing all necessary calculations to determine settlement awards pursuant to the formula set forth in Section 4.1 of this Agreement; (v) distributing, subject to the Court's approval, the Settlement Checks, the Service Award, attorneys' fees and costs, and the Service Award, and making corresponding tax determinations and withholdings as set forth in this Agreement; (vi) timely responding to inquiries from Plaintiffs' Counsel and Serco's Counsel; (viii) maintaining adequate records of its activities, including the dates of the mailing of Notice Packets, receipt of returned mail, and other communications with Plaintiffs, Plaintiffs' Counsel, and Serco's Counsel; (ix) confirming in writing to Plaintiffs' Counsel and Serco's Counsel its completion of the administration of the Agreement as directed in the Approval Order; (x) providing information, documents, and calculations necessary to confirm the amounts payable from the GSF; and (xi) such other tasks as the Parties mutually agree.

      D.    ***Access to the Claims Administrator.*** The Parties will have equal access to the Claims Administrator throughout the claims administration period. Plaintiffs' Counsel shall provide the Claims Administrator with information necessary to calculate the settlement amounts payable to the Plaintiffs, including their names, contact information, and dates of employment.

3.2.  **Approval Motion.**

      A.    Within fourteen (14) days after execution of this Agreement, Plaintiffs' Counsel shall file, subsequent to Serco's review and written approval, a motion to file under seal ("**Motion to Seal**") and a Motion for Settlement Approval ("**Approval Motion**").

      B.    The Approval Motion shall include: (1) the Notice Packet, (2) a proposed Approval Order, and (3) a supporting memorandum and other necessary documents.

      C.    The Approval Motion and its corresponding exhibits, including a fully executed Agreement, shall be filed under seal contemporaneously with the filing of the Motion to Seal and the Proposed Order authorizing the same pursuant to the filing requirements utilized by the Eastern Division of the Eastern District of Missouri.

3.3.  **Notice to Plaintiffs.**

      A.    ***Class List to Claims Administrator.*** Within seven (7) days after the Effective Date, Plaintiffs' Counsel shall provide the Claims Administrator and Serco's Counsel with an electronic spreadsheet containing Plaintiffs' names, phone numbers, and last known addresses. Within fourteen (14) days after receipt of the list from Plaintiffs' Counsel, Serco will provide to the Claims Administrator Plaintiffs' Social Security numbers and dates of employment at the Sites in an hourly, non-exempt ES role during the Relevant Period.

      B.    ***Initial Skip Trace.*** The Claims Administrator may conduct an initial skip trace on the addresses initially provided for all Plaintiffs (other than Sandoval) and their Social Security numbers. To the extent the skip trace identifies a more recent address for a Plaintiff than the last known-address provided by Plaintiffs' Counsel, the Claims Administrator will mail the Notice Packet to the address identified by the skip trace.

      C.    ***Mailing of Notice Packet and Settlement Checks.*** Within twenty-one (21) days after receipt of all of the information set forth in Subsection A, the Claims Administrator shall mail the Notice Packet and Settlement Checks to Plaintiffs. The back of each Settlement Check must include the following language:

           VOID IF ALTERED OR NOT CASHED BEFORE *[BAR DATE]* SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED

           By depositing or signing this check, I confirm my desire to release all wage & hour claims asserted in, or that could have been asserted in, *Mar'Bella*

-4-

> *Sandoval v. Serco, Inc.* My release of claims is detailed further in the Notice of Settlement, which I have received, read, and understand
>
> Endorsed: _____
> [*Payee's name printed by Claims Administrator*]

    D.    ***Skip Trace and Re-mailing.*** In the event that a Notice Packet mailed to a Plaintiff is returned as undeliverable, the Claims Administrator may conduct up to two (2) skip traces, and shall attempt re-mailing provided the skip trace identifies a more recent address. The Claims Administrator shall also, after notice to the Parties, mail a Notice Packet to any individual identified on the list of Plaintiffs provided by Plaintiffs' Counsel who contacts the Claims Administrator or Plaintiffs' Counsel during the time period between the initial mailing of the Notice Packets and the Bar Date and requests a Notice Packet. The Claims Administrator will notify Plaintiffs' Counsel and Serco's Counsel of the number of Notice Packets sent to Plaintiffs and returned as undeliverable. All costs of locating Plaintiffs will be paid from the QSF.

    E.    ***Other Communications.*** Outside of the notice process described herein, the Claims Administrator may not initiate contact with any Plaintiff for any reason, unless authorized in writing by Serco's Counsel. The Claims Administrator is not, however, prohibited from responding to a question directed to the Claims Administrator.

3.4.    **Termination of Agreement.**

    A.    ***Grounds for Settlement Termination.*** Either Serco or Sandoval may terminate the Agreement if the Court declines to enter the Approval Order, except if the Court declines to enter the Approval Order solely because of attorneys' fees sought by Plaintiffs' Counsel, the Service Award sought by Sandoval, or fees and costs sought for the Claims Administrator.

    B.    ***Procedures for Termination.*** To terminate this Agreement, the terminating Party shall give written notice to the other Party via email and overnight mail.

    C.    ***Effect of Termination.*** Termination, in the event that it occurs, shall have the following effects:

        1.    The Agreement shall be terminated and shall have no force or effect.

        2.    Serco shall have no obligation to make any payments to any Plaintiff or Plaintiffs' Counsel. However, if the Agreement is terminated pursuant to Section 3.4.A, the Parties shall share equally the costs and fees associated with the Claims Administrator subsequent to the signing of this Agreement.

        3.    The Parties may jointly or individually seek reconsideration of a ruling by the Court declining to enter the Approval Order in the form submitted by the Parties, or seek approval of a renegotiated settlement.

    4. All documents, negotiations, statements and proceedings relating to the settlement shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Action prior to the entering of this Agreement.

4. **MONETARY TERMS**

    4.1. **Settlement Amount.**

    A.

    

    B.

    C.

    D.

    4.2. **Attorneys' Fees, Expenses, and Costs.**

    A.

    

    B.

    C.

D. ███

E. ███

4.3. **Service Award to Sandoval.**

A. ███

B. ███

C. ███

4.4. **Allocation to Plaintiffs.** ███

A. ███

B. ███

C. ███

D. ███

4.5. **Tax Characterization.**

A. ███

-7-

B.



C.

5. **RELEASE**

   5.1. **Plaintiffs' Release of Wage-Hour Claims.** Conditioned upon entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, each Plaintiff, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Serco and the other Releasees for all of the Released Claims.

   5.2. **Sandoval's Additional General Release of Claims.** In addition to the waiver and release contained in Section 5.1 above, and in consideration for the payment(s) received under Sections 4.2, 4.3, and 4.4, Sandoval, including her heirs, executors, administrators, successors, and assigns, voluntarily release and forever discharges Serco and all other Releasees of and from any actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity (collectively, "**Claims**"), which she may have against Serco or any other Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations, constitutions, or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; and any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Serco and the other Releasees, based upon any conduct occurring up to and including the Effective Date. Sandoval also releases Serco and the other Releasees from any Claims concerning failure to provide her with any benefits pursuant to the terms of any employee benefit plan maintained, administered, sponsored, funded and/or paid, in whole or in part, by

        Serco, violated the terms of any such plan, breached any fiduciary obligation with respect to such plan, or discriminated against Sandoval for the purpose of preventing her from obtaining benefits pursuant to the terms of any such plan, or in any way violated any provision of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*

6. **DENIAL OF LIABILITY; AGREEMENT NOT TO PUBLICIZE**

    6.1. **Denial of Liability.** Serco enters into this Agreement to avoid further expense and disruption to its business. Plaintiffs and Plaintiffs' Counsel acknowledge and agree that this Agreement shall not be construed as an admission of liability by Serco or any other Releasees at any time, for any purpose, or under any circumstance. Neither this Agreement nor any negotiations in connection herewith shall be offered as or deemed to constitute evidence with respect to any past, present, or future issue or dispute, other than for purposes of enforcing this Agreement.

    6.2. **Agreement Not to Publicize.**

        A. Plaintiffs and Plaintiffs' Counsel will not, directly or indirectly, issue any press release, response to any press inquiry, website posting, social media posting, or other public communication or outreach regarding the Action, this Agreement, or the facts and circumstances underlying and giving rise to the Action or this Agreement. Nor will Plaintiffs or Plaintiffs' Counsel encourage others to do so.

        B. Plaintiffs and Plaintiffs' Counsel will not, directly or indirectly, discuss any aspect of the Agreement with any other individuals, including current or former Serco employees. Nor will Plaintiffs or Plaintiffs' Counsel encourage others to do so. This provision does not, however, purport to restrict the ability of Plaintiffs or Plaintiffs' Counsel to discuss the settlement, as needed, with their respective accountant, tax advisor, or spouse, nor does it purport to restrict Plaintiffs' Counsel's ability to discuss the settlement with Plaintiffs.

        C. In response to any inquiry from anyone other than their respective accountants, tax advisors, or spouses, regarding the facts and circumstances underlying and giving rise to the Action and/or this Agreement, Plaintiffs and Plaintiffs' Counsel will simply state that the matter has been resolved and will make no other comment.

7. **INTERPRETATION, ENFORCEMENT, AND MISCELLANEOUS TERMS**

    7.1. **Waiver of Right to Appeal.** Plaintiff Sandoval, individually and on behalf of Opt-In Plaintiffs, agrees to waive all appeals arising out the approval of this Settlement and/or the entry of Judgment by the Court.

    7.2. **Signatures; Authority to Sign.** This Agreement is valid and binding once signed by Serco, Sandoval, and Plaintiffs' Counsel. Sandoval represents that she is duly authorized to make decisions regarding the Action and enter into this Agreement on

behalf of the Opt-In Plaintiffs and to bind them to the Agreement's terms and conditions.

7.3. **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Sandoval and all other Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

7.4. **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

7.5. **No Assignment.** Sandoval, on behalf of herself and the other Plaintiffs, represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any Plaintiff's claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

7.6. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

7.7. **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

7.8. **Captions.** The captions or headings of the sections and subsections of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

7.9. **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Missouri, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

7.10. **Waiver or Amendments to Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

7.11. **Effective Date; Counterparts.** This Agreement shall be effective upon its full execution. The Parties may execute the Agreement in counterparts, and execution in

counterparts shall have the same force and effect as if all Parties had signed the same instrument.

7.12. **Email Signatures.** Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

7.13. **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**SANDOVAL, FOR HERSELF AND THE REST OF THE PLAINTIFFS, AND WITH AUTHORITY TO ACT FOR THE OTHER PLAINTIFFS AND BIND THEM, FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HER COUNSEL, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE THE CLAIMS DESCRIBED HEREIN AND DISMISS THE ACTION, INCLUSIVE OF SANDOVAL'S AND ALL OTHER PLAINTIFFS' CLAIMS, WITH PREJUDICE. SANDOVAL HAS AUTHORITY TO ENTER INTO THIS AGREEMENT ON BEHALF OF, AND TO THEREBY BIND, ALL PLAINTIFFS.**

**PLAINTIFFS' COUNSEL FURTHER EXPRESSLY AGREES TO THE NON-PUBLICITY PROMISES SET FORTH IN SECTION 6.2.**

By: *MS* (MARBELLA M SANDOVAL (Apr 2, 2021 12:13 CDT))   Date: Apr 2, 2021
MAR'BELLA SANDOVAL

By: *Clif Alexander* (Clif Alexander (Apr 2, 2021 12:27 CDT))   Date: Apr 2, 2021
COUNSEL FOR PLAINTIFFS

SERCO, INC.

By: _____   Date: _____

Name (print): _____   Title: _____

-11-

68072698v.2

     counterparts shall have the same force and effect as if all Parties had signed the same instrument.

7.12. **Email Signatures.** Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

7.13. **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**SANDOVAL, FOR HERSELF AND THE REST OF THE PLAINTIFFS, AND WITH AUTHORITY TO ACT FOR THE OTHER PLAINTIFFS AND BIND THEM, FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HER COUNSEL, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE THE CLAIMS DESCRIBED HEREIN AND DISMISS THE ACTION, INCLUSIVE OF SANDOVAL'S AND ALL OTHER PLAINTIFFS' CLAIMS, WITH PREJUDICE. SANDOVAL HAS AUTHORITY TO ENTER INTO THIS AGREEMENT ON BEHALF OF, AND TO THEREBY BIND, ALL PLAINTIFFS.**

**PLAINTIFFS' COUNSEL FURTHER EXPRESSLY AGREES TO THE NON-PUBLICITY PROMISES SET FORTH IN SECTION 6.2.**

By: _____   Date: _____
MAR'BELLA SANDOVAL

By: _____   Date: _____
COUNSEL FOR PLAINTIFFS

SERCO INC.

By: _____   Date: _____4/2/2021_____
Name (print): David Goldberg            Title: Senior Vice President, General Counsel